UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRY RENEE MCCLURE and DUSTIN HUBBARD,

Plaintiffs,

v.

PRISONER TRANSPORTATION SERVICES OF AMERICA, LLC, et al.,

Defendants.

No.  1:18-cv-00176-DAD-SKO

Consolidated with

No. 1:18-cv-00917-DAD-SKO

ORDER GRANTING IN PART DEFENDANTS PRISONER TRANSPORTATION SERVICES OF AMERICA, LLC'S AND CLEVELAND WHEELER'S MOTIONS FOR SUMMARY JUDGMENT, AND DENYING DEFENDANTS LETICIA MONIQUE AVALOS'S AND FAUSTOS AVALOS'S AMENDED MOTION FOR SUMMARY JUDGMENT

(Doc. Nos. 137, 138, 140, 141)

This matter is before the court on motions for summary judgment filed on behalf of defendants Prisoner Transportation Services of America, LLC ("PTSA") and Cleveland Wheeler (Doc. Nos. 137, 138) as well as a separate motion for summary judgment filed on behalf of defendants Leticia Monique Avalos and Faustos Avalos (collectively, the "Avaloses" or "Avalos defendants") (Doc. Nos. 140, 141).  Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, all motions were taken under submission on the papers.  (Doc. Nos. 139, 142.)  For the reasons explained below, the court will grant in part

/////

/////

1

1  and deny in part defendants PTSA and Wheeler's motions for summary judgment and deny the

2  motion for summary judgment brought on behalf of the Avalos defendants.[1]

3                                    **BACKGROUND**

4         This case concerns a multi-vehicle collision involving all defendants that occurred on July

5  8, 2016 on State Route 99 in Modesto, California.  The facts set forth below are based on the

6  parties' separate statements of facts, which include defendants PTSA and Wheeler's alleged

7  material facts and plaintiffs' responses submitted thereto (Doc. Nos. 137-2, 138-2, 145, 167-1,

8  168-1), as well as the Avalos defendants' alleged material facts and plaintiffs' and defendant

9  Albert T. Gonzalez's responses thereto (Doc. Nos. 141-2, 157-1, 159-2, 164-2).

10        On July 8, 2016 on State Route 99 in Modesto, California, a multi-vehicle collision

11 occurred involving four vehicles driving in the following order:  a Dodge Ram truck driven by

12 Adam Budell (not a party to this case); a Chevrolet Express van ("PTSA van") driven by

13 defendant Cleveland Wheeler and owned by defendant PTSA; a Chevrolet Silverado truck

14 ("Gonzalez truck") driven by defendant Albert Gonzalez; and, a Chevrolet sedan[2] driven by

15 defendant Leticia Avalos and owned by defendant Faustos Avalos.

16 **A.       PTSA and Its Written Policies**

17        PTSA is an independent private company that provides prisoner transportation services

18 through contracts with government law enforcement entities.  (Doc. No. 137-2 at ¶¶ 1, 2.)

19 Cleveland Wheeler was employed as a driver for PTSA, received training in connection with his

20 _____

21 [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
   overwhelming caseload has been well publicized and the long-standing lack of judicial resources

22 in this district long-ago reached crisis proportion.  That situation has now been partially addressed
   by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on

23 December 17, 2021.  Nonetheless, for over twenty-two months the undersigned was left presiding
   over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That

24 situation resulted in the court not being able to issue orders in submitted civil matters within an
   acceptable period of time and continues even now as the undersigned works through the

25 predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly
   frustrating it is to the parties and their counsel.

26

27 [2]  There appears to be some dispute as to whether the vehicle driven by defendant Leticia Avalos
   was a Chevrolet Malibu or Impala sedan (*see* Doc. Nos. 138-1 at 10; 141 at 4), but the exact

28 model is immaterial to this suit.

employment, had held his role for approximately three years at the time of the collision at issue, and had previously been involved in one other collision, for which he reports the other driver was found at fault. (*Id.* at ¶¶ 3–5; Doc. No. 145 at ¶¶ 3–5.)

PTSA's written policies and procedures require drivers to "operate vehicles in a manner to maximize the safety and security of prisoners" and require all prisoners to be restrained with handcuffs, Martin Chain, leg irons, and interconnecting chains, but not necessarily seatbelts. (Doc. No. 137-2 at ¶¶ 7, 8.) The written policies and procedures also provide that prisoner restroom stops should occur every four hours and may occur only in a "secure detention facility." (*Id.* at ¶ 6.) PTSA asserts that when secure detention facilities are located more than four hours away, drivers should provide prisoner restroom breaks only at the next secure detention facility. (*Id.*) Plaintiffs dispute that the PTSA policies and procedures provide for any exceptions to this four-hour restroom rule. (Doc. No. 145 at ¶ 6.) PTSA does not provide medical care or hygiene care, which must occur at either a medical or a custodial facility. (Doc. No. 137-2 at ¶ 9.) Plaintiffs assert that PTSA has a legal duty to provide medical care to prisoners in its care. (Doc. No. 145 at ¶ 9.)

**B.      The Multi-Car Collision on State Route 99**

The evidence on summary judgement establishes the following. Defendant Wheeler drove the PTSA van that provided transportation to plaintiffs Terry McClure and Dustin Hubbard on July 8, 2016 and that was involved in the multi-vehicle collision in Modesto. (Doc. Nos. 137-2 at ¶¶ 10, 19; 138-2 at ¶ 12.) The PTSA van driven by defendant Wheeler was beginning a cross-country trip to bring plaintiffs to a detention facility in Kentucky. The van was not equipped with seatbelts for the inmates and was divided by caged partitions into three compartments separating the driver cab, female prisoners, and male prisoners. (Doc. No. 137-2 at ¶¶ 10, 11.) Plaintiff McClure testified that the PTSA van had a circulating fan, and defendant Wheeler testified that the PTSA van was equipped with air conditioning. (Doc. No. 137-2 at ¶ 14.) Plaintiffs were restrained with handcuffs and ankle shackles in the van and were not secured to the PTSA van itself. (*Id.* at ¶ 13.) While seated in the van, plaintiff Hubbard could only see a portion of the windshield on the left side of the PTSA van, was unable to see the

3

1    speedometer, and could not see clearly into the driver's compartment. (*Id.* at ¶ 16; Doc. No. 145

2    at ¶ 16.) From his seat, plaintiff McClure could not see the PTSA van's front windshield, the

3    driver, or the passenger, but could hear muffled conversations between defendant Wheeler and

4    PTSA employee David Hedrick, who was seated in the front passenger seat of the van. (Doc.

5    Nos. 137-2 at ¶¶ 17, 18; 145 at ¶ 18.)

6        Prior to the collision, neither plaintiff knew how fast defendant Wheeler was driving.

7    (Doc. No. 137-2 at ¶¶ 21, 22.) However, plaintiff Hubbard testified at deposition that the traffic

8    was "stop and go" just prior to the accident and that defendant Wheeler was accelerating quickly

9    and braking. (*Id.* at ¶ 21.) Plaintiff McClure testified at his deposition that traffic was congested

10   and he thought the PTSA van could not have been traveling fast due to that congestion, but also

11   that he believed the PTSA van accelerated quickly. (*Id.* at ¶¶ 22, 23.) Plaintiff McClure thought

12   that defendant Wheeler pressed on the brakes, causing the prisoners to shift forward toward the

13   front of the PTSA van and the van to skid "for a while" before it turned left. (*Id.* at ¶ 24.)

14   Plaintiff McClure felt a small impact just before the PTSA van stopped moving, describing it as if

15   the van "barely hit the car in front," and felt a strong impact from behind that caused him to go

16   airborne inside the van. (*Id.* at ¶ 25.) Plaintiff Hubbard testified to feeling one impact to the front

17   and another impact from behind. (*Id.* at ¶ 26.)

18       Defendant Wheeler felt the first impact from behind, followed by the PTSA van striking

19   the vehicle in front of it, as well as the center road divider. (Doc. No. 141-2 at ¶¶ 7, 8.)

20   Defendant Wheeler did not remember feeling any other impact. (*Id.* at ¶ 9.) According to

21   defendant Gonzalez, he was traveling approximately 65 miles per hour behind the PTSA van

22   when it suddenly braked. (Doc. No. 157-2 at ¶ 4.) Defendant Gonzalez applied his brakes and

23   felt an impact from behind from the Avalos vehicle, which he has stated pushed his truck into the

24   PTSA van. (*Id.*) However, defendant Leticia Avalos believed that the Gonzalez's truck collided

25   with the PTSA van prior to the Avalos' car impacting Gonzalez's truck. (Doc. No. 141-2 at 17.)

26   California Highway Patrol Officer Christopher K. Shore investigated the incident, which

27   investigation included the interviewing of a third-party witness who was driving immediately

28   /////

4

behind Avalos' car at the time of the accident, and filed a report summarizing his findings and conclusions.  (Doc. No. 141-2 at ¶¶ 12, 18–36.)

**C.      Events Following the Collision**

After the collision, multiple attempts were made to open the PTSA van's rear doors: PTSA employee Hedrick made three attempts to open the rear doors; defendant Wheeler attempted to open the doors approximately five minutes after the collision and two to three minutes after exiting the vehicle; law enforcement and emergency personnel also made such attempts, but all were unsuccessful until fire truck personnel used the jaws of life to free the plaintiffs.  (Doc. No. 138-2 at ¶¶ 27, 28.)  Ambulance personnel transported plaintiffs to Doctors Medical Center, where plaintiffs Hubbard and McClure were administered x-rays and received pain medication (Motrin in the latter's case).  (*Id.* at ¶ 29; Doc. No. 137-1 at ¶¶ 29, 42.)  Law enforcement subsequently transported plaintiff Hubbard to Modesto County Jail and plaintiff McClure to Stanislaus County Jail, where they remained overnight until defendant Wheeler returned the next day with a new PTSA van he procured from Las Vegas to continue the cross-country transport trip.  (Doc. Nos. 137-2 at ¶¶ 30–32; 138-1 at ¶¶ 30–32.)  The new PTSA van also did not have seatbelts, did have a fan, and was similar to the first PTSA van, except that the male prisoner section was separated by a solid steel partition rather than a cage partition, and the windows were "blacked out."  (Doc. No. 137-2 at ¶¶ 33–34.)

Plaintiff McClure thought it took five to six hours to drive from Modesto to Los Angeles.  (*Id.* at ¶ 35.)  The PTSA van made multiple stops along its route in Los Angeles, Nevada, Arizona, Kansas, and eventually Christian County, Kentucky, where plaintiffs were eventually dropped off at the Christian County Jail.  (*Id.*)  Plaintiff McClure recalls at least two stops in addition to a stay in Wichita, Kansas, his stay at the medical facility in Modesto, his jail stay in Stanislaus County, and his multiple overnight stays during the trip, though he did not specify that these stops were the restroom breaks described by defendants.  (*Id.* at ¶ 36; Doc. No. 145 at ¶ 36.)  Defendant Wheeler provided plaintiffs with water bottles during the trip, which plaintiffs urinated into during the transport in between restroom breaks.  (*Id.* at ¶¶ 36.)  Plaintiff Hubbard estimated

/////

5

1   that the longest time between restroom breaks during their journey was six hours.  (Doc. Nos.

2   137-2 at ¶ 38; 138-2 at ¶ 41.)

3          While the PTSA van traveled through Colorado, defendant Wheeler apparently

4   accelerated while changing lanes just as plaintiff McClure was zipping up his pants after urinating

5   into his water bottle, which caused plaintiff to lacerate his penis.  (Doc. No. 137-2 ¶ 38.)

6   Although plaintiff McClure did not inform defendant Wheeler or medical personnel at the jail of

7   his injury, plaintiff McClure testified that "[e]verybody in the van knew" about the injury,

8   including defendant Wheeler.  (*Id.*; Doc. No. 145 at ¶ 38.)  During his stay at the facility in

9   Wichita, Kansas, plaintiff McClure took a shower for the first time during the transport and was

10  seen by medical personnel, who dressed plaintiff's injuries for the first time with bandages and

11  ointment.  (Doc. No. 137-2 at ¶ 39.)  After defendant Wheeler transported plaintiff McClure to

12  Kentucky, another  PTSA employee in a different van transported plaintiff McClure from

13  Kentucky to his final destination in South Carolina, where he was incarcerated at the Lexington

14  County Detention Center (LCDC).  (*Id.* at ¶¶ 40, 43.)  The new PTSA van did not accelerate or

15  swerve during this leg of the trip, and stopped every one to two hours for  restroom breaks.  (*Id.* at

16  ¶ 40.)  Plaintiff McClure did not submit any administrative grievances at LCDC before filing this

17  civil action.  (*Id.* at ¶ 45.)

18  **D.    Procedural Background**

19         This action proceeds on plaintiffs' third amended complaint, which consolidated the

20  individual complaints filed by plaintiffs McClure and Hubbard.  (Doc. No. 83.)  The operative

21  third amended complaint asserts the following claims:  (i) general negligence against defendants

22  PTSA, Cleveland Wheeler, Leticia Avalos, Faustos Avalos, and Albert Gonzalez; (ii) claims

23  pursuant to 42 U.S.C. § 1983 against defendants PTSA and Wheeler; and, (iii) claims of

24  intentional infliction of emotional distress against defendants PTSA and Wheeler.  (*Id.* at 12–25.)

25  In addition to special and general damages, plaintiffs seek the award of punitive damages against

26  defendants PTSA and Wheeler.  (*Id.* at 26.)

27         On July 2, 2020, defendants PTSA and Wheeler filed joint motions for summary judgment

28  in their favor as to plaintiffs' causes of action brought under 42 U.S.C. § 1983, claims for

1    intentional infliction of emotional distress, and claims for punitive damages.  (Doc. Nos. 137,

2    138.)  On July 21, 2020, plaintiffs filed a joint opposition to joint motions for summary judgment

3    brought on behalf of defendants PTSA and Wheeler.  (Doc. No. 144.)  On July 30, 2020,

4    plaintiffs filed a request to amend their opposition brief and concurrently filed their proposed

5    amended opposition.  (Doc. Nos. 154, 154-1.)  The court will grant plaintiffs leave to amend their

6    opposition brief (Doc. No. 154), the amended opposition (Doc. No. 154-1) will be considered by

7    the court, and the court will strike plaintiffs' originally filed opposition (Doc. No. 144).  On

8    August 11, 2020, defendants PTSA and Wheeler filed reply briefs to plaintiffs' opposition and

9    objected to plaintiffs' evidence offered in opposition to their motions for summary judgment.

10   (Doc. Nos. 167, 168.)

11        On July 17, 2020, the Avalos defendants filed a motion for summary judgment as to

12   plaintiffs' sole cause of action for negligence against them with a concurrent request for the

13   taking of judicial notice.  (Doc. Nos. 140, 141.)[3]  Defendant Gonzalez and plaintiffs filed separate

14   opposition briefs on August 4, 2020.  (Doc. Nos. 157, 159.)  The Avalos defendants filed reply

15   briefs on August 11, 2020.  (Doc. Nos. 164, 165.)  Plaintiff McClure subsequently filed a stand-

16   alone declaration in opposition to this motion for summary judgment on August 11, 2020.  (Doc.

17   No. 169.)  Defendants PTSA and Wheeler jointly filed objections to that declaration (Doc. No.

18   172), as did the Avalos defendants (Doc. No. 170).

19                                **LEGAL STANDARD**

20        Summary judgment is appropriate when the moving party "shows that there is no genuine

21   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

22   Civ. P. 56(a).

23

24   [3]  On July 17, 2020, the Avalos defendants filed two motions for summary judgment.  (Doc. Nos.
     140, 141.)  On August 10, 2020, the Avalos defendants filed a notice of errata stating their intent
25   for Doc. No. 141 to supersede Doc. No. 140, except for the request for judicial notice (Doc. No.
     140-2) filed as an attachment to their initial motion for summary judgment.  (Doc. No. 163.) The
26   court will strike Doc. No. 140, except for the request for judicial notice attached as Doc. No. 140-
     2.  The request for judicial notice, however, merely seeks notice of pleadings appearing on the
27   court's docket (Doc. No. 140-2 at 1–2). The court can consider these documents appearing on its
     own docket without taking judicial notice of them.  Accordingly, the request for judicial notice is
28   denied as moot.

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is

1    material, i.e., a fact that might affect the outcome of the suit under the governing law.  *See*

2    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

3    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The opposing party also must demonstrate

4    the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

5    the non-moving party.  *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d

6    1433, 1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10   trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12   *Matsushita*, 475 U.S. at 587 (citations omitted).

13         "In evaluating the evidence to determine whether there is a genuine issue of fact," the

14   court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

15   *Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing

16   party's obligation to produce a factual predicate from which the inference may be drawn.  *See*

17   *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d

18   898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do

19   more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here

20   the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

21   there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

22                                        **DISCUSSION**

23         Below, the court will first address the pending motion for summary judgment brought on

24   behalf of the Avalos defendants.  The Avalos defendants argue that the evidence before the court

25   demonstrates that they were not the cause of plaintiffs' injuries and damages and that they are

26   entitled to summary judgment in their favor as to plaintiffs' negligence claim.  As a result, they

27   also contend they should be granted summary judgment with respect to the cross-claims for

28   equitable indemnity, contribution, apportionment of fault, and declaratory relief brought by

9

1  defendants PTSA, Wheeler, and Gonzalez, all of which cross-claims rely on their alleged liability

2  to the plaintiffs.  (Doc. No. 141 at 5.)

3        Next, the court will address the pending motions for summary judgment brought by

4  defendants PTSA and Wheeler.  Defendants PTSA and Wheeler argue that plaintiffs' deposition

5  testimony demonstrate that no civil rights violations occurred because no reasonable fact finder

6  could rule in plaintiffs' favor on their causes of action brought under 42 U.S.C. § 1983[4], their

7  claim for intentional infliction of emotional distress, or their punitive damages claim.  (Doc. Nos.

8  137-1 at 9, 138-1 at 10.)  Defendants PTSA and Wheeler also argue that plaintiffs may only

9  pursue a claim for negligence against PTSA with respect to the motor vehicle collision.  (Doc.

10  Nos. 137-1 at 9, 138-1 at 10.)  All parties have filed objections to the evidence offered by the

11  other parties on summary judgment.[5]  The court will address each of the defendants' arguments in

12  turn.[6]

13  _____

14  [4]  As noted by defendants, the TAC's reference to 42 U.S.C. § 198<u>2</u> would appear to be a
    typographical error.

15
16  [5]  In resolving the pending motions for summary judgment, the court finds it unnecessary to rule
    on the parties' evidentiary objections because the objected-to evidence is not being relied upon by
17  the court.  Moreover, the court notes that "[a]t summary judgment, a party does not necessarily
    have to produce evidence in a form that would be admissible at trial."  *Nevada Dep't of Corr. v.*
18  *Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Block v. City of Los Angeles*, 253 F.3d 410,
    418–19 (9th Cir. 2001)) (internal quotations omitted).  The focus is instead on the admissibility of
19  the evidence's contents, not its form.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.
    2003).  "Objections to evidence on the ground that the evidence is irrelevant, speculative,
20  argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all
    duplicative of the summary judgment standard itself."  *Century 21 Real Estate LLC v. All Prof'l*
21  *Realty, Inc.*, 889 F.Supp.2d 1198, 1215 (E.D. Cal. 2012) (citing *Burch v. Regents of the Univ. of*
    *Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006)).  "Even if the non-moving party's
22  evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on
    a motion for summary judgment so long as the moving party's objections could be cured at trial."
23  *Id.*

24
25  [6]  From the court's perspective, it appears that defendants' motions adhere to a "quantity over
    quality" approach, including a number of arguments with what appears to have been little regard
26  for the strength and viability of the underlying legal theories.  While counsel must advocate
    zealously for their clients, zealous advocacy need not involve the addition of every possible
27  argument in support of a motion without regard for the strength of the legal support.  This
    approach has contributed to the length of this order.  However, given the court's own delay, the
28  undersigned did not wish to take additional time attempting to make it any shorter.

**A.     The Motion for Summary Judgment Brought by the Avalos Defendants**

The only cause of action plaintiffs have asserted against the Avalos defendants is for negligence.  The Avalos defendants now seek summary judgment in their favor as to that cause of action, contending that the evidence presented on summary judgment does not demonstrate causation and that therefore no reasonable trier of fact could find for plaintiffs on their claim of negligence against them.

In order to succeed on a claim for negligence, plaintiffs must allege and demonstrate the existence of  "duty, breach of duty, causation, and damages."  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).  To establish that defendants caused plaintiffs' damages, plaintiffs "must show the defendant's act or omission was a substantial factor in bringing about the plaintiff's harm."  *Leyva v. Garcia*, 20 Cal. App. 5th 1095, 1104 (2018) (internal citation omitted).  A "mere possibility of such causation is not enough," and plaintiffs "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."  *Peralta v. Vons Companies, Inc.*, 24 Cal. App. 5th 1030, 1035 (2018) (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205–06 (2001)).  Causation may be determined as a question of law appropriate for resolution on summary judgment "only if, under undisputed facts, there is no room for a reasonable difference of opinion."  *Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 231 Cal. App. 4th 11, 33 (2014) (internal citation omitted).

The Avalos defendants argue that "the essential element of causation [for plaintiffs' negligence claim] as to Avalos cannot be established" because (1) defendant Wheeler and plaintiffs McClure and Hubbard have all testified that there were only two impacts involved in this collision; and (2) the accident reconstruction experts for both defendant PTSA and the Avaloses'—despite disagreeing as to the order of those impacts—concluded that the impact involving the Avaloses' car was involved in the last impact, did not come into contact with the PTSA van, and did not cause the Gonzalez truck to collide with the PTSA van.  (Doc. No. 141 at 13.)  In particular, the Avaloses point out that expert Dr. Jesse Wobrock has opined that their car "struck the Gonzalez vehicle without pushing it with force sufficient to cause an additional

11

impact with the PTSA van." (*Id.* at 11–12.)  The Avalos defendants argue that on summary judgment plaintiffs have not come forward with any evidence to overcome the accident reconstruction expert opinions (in part because plaintiffs did not designate any experts of their own) and that no reasonable fact finder could determine from the evidence that the Avaloses were a cause of plaintiffs' injuries.  (*Id.* at 15–16.)  Furthermore, the Avaloses argue that a jury may not consider the opinion of Officer Shore as to the order of the impacts based on his observations and witness statements taken at the collision site, because he has not been qualified as an expert, is not an accident reconstructionist, and there were inconsistencies in the witness statements taken at the collision site.  (*Id.* at 17–18.)  The Avalos defendants also contend that the deposition testimony of defendant Wheeler and plaintiffs McClure and Hubbard support their motion for summary judgment because "[t]here has been no testimony from any party that the Avalos vehicle impacted or caused another vehicle to impact the PTSA van."  (*Id.* at 16.)

In his opposition to the Avaloses' motion for summary judgment, defendant Gonzalez argues that there is a triable issue of material fact as to causation in this case, such that a reasonable jury could find from the evidence that the Avaloses in fact contributed to the collision and caused plaintiffs' injuries.  (Doc. No. 157 at 1, 3–4.)  Defendant Gonzalez clarifies that Dr. Wobrock "only opines that the PTSA van was the first collision in the sequence of events" and has not opined that the impact from the Avalos vehicle did not cause a further impact between the Gonzalez truck and the PTSA van.  (*Id.* at 3 (citing Doc. No. 141-2 at ¶¶ 38–40.))  Defendant Gonzalez also notes that PTSA's expert, Rene Castenada, has presented a conflicting opinion that the Gonzalez vehicle caused the first impact, not the PTSA van as Dr. Wobrock opined.  (*Id.* at 3 (citing Doc. No. 141-2 at ¶¶ 43–45, 47–48.))  He further contends that the order of impact is a disputed issue of material fact because defendant Wheeler testified that the first impact came from behind the PTSA van, whereas defendant Gonzalez stated that he was "struck from behind by the Avalos vehicle and pushed into the PTSA van," and plaintiffs testified that they first felt the PTSA van strike the vehicle in front of the van and then felt a subsequent impact from behind. (*Id.* at 3–4 (citing Doc. Nos. 141-2 at ¶¶ 7, 10, 11; 157-2 at ¶ 4.))

/////

1    In their opposition to the Avalos defendants' motion, plaintiffs argue that there exists a

2    genuine disputed issue of fact as to who caused this accident.  (Doc. No. 159 at 3.)  Similar to

3    defendant Gonzalez, plaintiffs note that:  (i) Officer Shore concluded that Leticia Avalos caused

4    the collision, whereas Dr. Wobrock opined that the impact between the Avalos car and the

5    Gonzalez truck occurred last, which would rule out the Avaloses as the cause of the entire

6    collision, and (ii) PTSA's expert has testified that the first impact occurred when defendant

7    Gonzalez's truck struck the PTSA van.  (*Id.* at 3–4.)  Plaintiffs also argue that even if the

8    Avaloses' vehicle was not involved in the first impact of the multi-vehicle collision, a reasonable

9    jury could find that defendant Gonzalez may have avoided colliding with the PTSA van after the

10   van stopped if not for the Avaloses' vehicle hitting defendant Gonzalez's truck and forcing it to

11   subsequently pitch forward and strike the PTSA van.  (*Id.* at 4–5.)

12   In reply, the Avaloses assert that there exists no genuine dispute of material facts, and that

13   any disputed fact is immaterial to their arguments that they are entitled to judgment in their favor

14   on plaintiffs' negligence claim.  (Doc. Nos. 164 at 2–3; 165 at 2–3.)

15   Based upon the evidence presented on summary judgment, the court finds that there is a

16   genuine dispute of facts as to the cause of the collision and that from that evidence a reasonable

17   jury could determine that the actions of the Avalos defendants were a substantial factor in causing

18   the collision and plaintiffs' injuries.  Specifically, the parties have presented evidence on

19   summary judgment disputing the order in which each vehicle struck the other, and therefore

20   which vehicle caused plaintiffs' injuries.  In this regard, the parties have presented the opinions of

21   experts who disagree on the order of the impacts in this multi-vehicle collision.  (Doc. No. 141-2

22   at ¶¶ 38–40, 43–45, 47–48.)  The Avaloses' expert, Dr. Wobrock, opined that the PTSA van

23   caused the first impact when it collided with the vehicle in front of it.  (*Id.* at ¶¶ 38–40.)

24   Defendant PTSA's expert opined that the Gonzalez truck striking of the PTSA van was the first

25   impact in the collision.  (*Id.* at 43–45, 47–48.)  The parties have also submitted other testimony

26   that conflicts with these expert opinions:  defendant Wheeler testified that the first impact he felt

27   was from behind when the Gonzalez truck struck the PTSA van, defendant Gonzalez testified that

28   he was first struck by the Avaloses' vehicle, which caused his truck to be pushed into the PTSA

van, and plaintiffs testified that they first felt the PTSA van strike the vehicle in front of them, and then felt an impact into the van from behind.  (Doc. Nos. 141-2 at ¶¶ 7, 10, 11; 157-2 at ¶ 4.)

The Avalos defendants' argument that only expert testimony may be considered in ruling on the pending motion is unavailing.  Federal Rule of Evidence 701 permits testimony by lay witnesses that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Here, the testimony given by plaintiffs and defendants Wheeler and Gonzalez satisfy all three criteria under Rule 701 because the testimony of those parties is:  based on their own perception of the collisions, helpful to determining causation, and not based on any scientific, technical, or specialized knowledge in the realm of expert witnesses.  Given the conflicting testimony of those involved in the collision and the conflicting expert opinions, the court concludes that there is sufficient evidence from which a reasonable jury could find that the actions of the Avalos defendants were a substantial factor in causing the collision that resulted in plaintiffs' injuries.

For these reasons, the court will deny the Avalos defendants' motion for summary judgment (Doc. No. 141).

**B.      Defendants PTSA and Wheeler's Motions for Summary Judgment**

Although defendants PTSA and Wheeler filed separate motions for summary judgment against each plaintiff, the issues and arguments raised therein are substantially identical, with the exception of a failure to exhaust administrative remedies affirmative defense that defendants raise only in their motion for summary judgment in their favor on the claims brought by plaintiff McClure.  (Doc. Nos. 137-1, 138-1.)  Plaintiffs filed a joint response in opposition to these pending motions for summary judgment.  (Doc. No. 154-1.)  In the interests of efficiency, the court will address the administrative exhaustion defense on summary judgment separately and then turn to address the remaining issues raised by these two pending motions jointly.

1.      <u>Failure to Exhaust Administrative Remedies is Not an Applicable Defense</u>

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

1  prisoner, confined in any jail, prison, or other correctional facility until such administrative

2  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  An "institution" that is subject

3  to the PLRA are defined as "any facility or institution . . . which is owned, operated, or managed

4  by, or provides services on behalf of any State," but "[p]rivately owned and operated facilities

5  shall not be deemed 'institutions[.]'"  42 U.S.C. §§ 1997(1)(A), (2).  The PLRA also defines

6  "prisoners" as "any person incarcerated or detained in any facility."  42 U.S.C. § 1997e(h).

7  Moreover, where required under the PLRA exhaustion of administrative remedies is mandatory,

8  and "unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

9  The exhaustion requirement applies to all inmate suits relating to prison life, regardless of the

10  relief sought by the prisoner or offered by the administrative process.  *See Porter v. Nussle*, 534

11  U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  In other words, a prisoner

12  may not file a complaint in a court action raising non-exhausted claims.  *Rhodes v. Robinson*, 621

13  F.3d 1002, 1004 (9th Cir. 2010).

14       The failure to exhaust administrative remedies is an affirmative defense that the defendant

15  must plead and prove.  *Jones*, 549 U.S. at 204, 216.  The defendant bears the burden of producing

16  evidence that proves a failure to exhaust; summary judgment is appropriate only if the undisputed

17  evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust

18  available administrative remedies.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).  On a

19  motion for summary judgment, the defendant bears the initial burden of proving (1) the existence

20  of an available administrative remedy, and (2) the plaintiff failed to exhaust that remedy.  *Id.* at

21  1172.  If the defendant makes this showing, the burden then shifts to the prisoner to present

22  evidence showing "that there is something in his particular case that made the existing and

23  generally available administrative remedies effectively unavailable to him."  *Id.* (citation

24  omitted).

25       The ultimate burden of proof in connection with an alleged failure to exhaust, however,

26  remains with the defendant.  *Albino*, 747 F.3d at 1172.  "If a motion for summary judgment is

27  denied, disputed factual questions relevant to exhaustion should be decided by the judge."  *Id.* at

28  1170.  Only when the court finds that remedies were not available, the prisoner exhausted

1  available remedies, or the failure to exhaust available remedies should be excused, will the case

2  proceeds to the merits.  *Id.* at 1131.

3        In their pending motion for summary judgment defendants PTSA and Wheeler first argue

4  that plaintiff McClure failed to exhaust all available administrative remedies prior to filing suit in

5  this court and that his third and fourth causes of action brought pursuant to 42 U.S.C. § 1983

6  should be dismissed as a result.  (Doc. No. 138-1 at 15.)  Defendants assert that because plaintiff

7  McClure was an inmate at Lexington County Detention Center ("LCDC"), he was required to

8  follow LCDC's procedures for the filing of an inmate grievance pursuant to PLRA.  (*Id.*)

9  Defendants note that although plaintiff McClure did file administrative grievances raising other

10  unrelated issues, he never filed an inmate grievance about the events from which this lawsuit

11  arose.  (*Id.* at 16.)  Defendants conclude that plaintiff McClure's failure to exhaust such

12  administrative remedies preclude his ability to file suit pursuant to 42 U.S.C. § 1983, such that

13  dismissal of those claims on summary judgment is appropriate.

14        In opposition, plaintiff McClure argues that he had no obligation to exhaust administrative

15  remedies because the PTSA van was not a jail or prison subject to PLRA's administrative

16  exhaustion regime.  (Doc. No. 154-1 at 3.)  Plaintiff McClure also argues that a prison transport

17  van is not an "institution" subject to the PLRA, because it is a privately owned and operated, and

18  not owned, operated, managed by, or providing services on behalf of the state.  (*Id.* at 4 (citing 42

19  U.S.C. §§ 1997(1)(A), (2).))  In this regard, plaintiff McClure points out that at the time of the

20  collision and the subsequent events, he was being transported in the custody of a private

21  company, and "not incarcerated or detained in any facility" and "not confined in a jail, prison, or

22  correctional facility . . . [had] not yet arrived to [his] respective jails, nor had [he] been released

23  into the custody of a local government."  (*Id.* at 3–4.)  Plaintiff argues that he was therefore not a

24  "prisoner" under PLRA's definition nor in custody at an "institution" subject to PLRA's

25  administrative exhaustion requirements during the collision or the subsequent events which are

26  the subject matter of this civil action.  (*Id.*)

27        In reply, defendants PTSA and Wheeler argue that if the exhaustion of administrative

28  remedies requirement does not apply because the PTSA van is not a facility subject to PLRA,

1    then plaintiff McClure would also be unable to bring a 42 U.S.C. § 1983 claim against

2    defendants.  (Doc. No. 167 at 5.)  Defendants note that this court has previously found that a

3    § 1983 claim may be pursued against PTSA because it was performing an exclusive government

4    function in transporting prisoners with authorization from the state, and that other courts have

5    similarly permitted § 1983 claims to proceed against private prison transport companies.  (*Id.*)

6    Defendants assert that transportation between facilities, such as plaintiff McClure's transportation

7    to LCDC, "is a part of 'prison life' or the confinement process and is subject to the exhaustion of

8    administrative remedies requirement," which "applies to all inmate suits about prison life,

9    whether involving general circumstances or specific incidents."  (*Id.* at 5–6 (citing *Porter*, 534

10   U.S. at 532.))

11          The court finds plaintiff McClure's arguments on this point to be persuasive.  The plain

12   language of the PLRA applies to a "prisoner, confined in any jail, prison, or other correctional

13   facility" (42 U.S.C. § 1997e(h)) and defines "prisoner" as "any person incarcerated or detained in

14   any facility."  42 U.S.C. § 1997e(h).  Although plaintiff McClure was in the custody of

15   defendants Wheeler and PTSA while in the PTSA van during his transport, he is not required to

16   exhaust administrative remedies because the PLRA specifically provides that "[p]rivately owned

17   and operated facilities" like the PTSA van "shall not be deemed 'institutions'" subject to the

18   requirements of the PLRA and he was not confined in a correctional facility at the time the events

19   at issue in this action occurred.  *See* 42 U.S.C. §§ 1997(2); *see also Jasperson v. Federal Bureau

20   *of Prisons*, 460 F. Supp. 2d 76, 87 (D.D.C. 2006) (holding that the plaintiff was not required to

21   exhaust administrative remedies while in the custody of the Federal Bureau of Prisons but not yet

22   actually confined in a correctional facility).

23          The court has been unable to identify any case in which the PLRA's administrative

24   exhaustion requirement was enforced against plaintiffs bringing suit against a private prison

25   transport company.  Indeed, defendants have not cited any case in support of this proposition.

26   (*See* Doc. Nos. 138-1, 167.)  Cases arguably similar to the one before the court that have been

27   identified are  distinguishable from this one.

28   /////

1    In one case, a district court concluded that the plaintiff must first exhaust administrative

2    remedies with respect to an Eighth Amendment claim of excessive use of force that allegedly

3    took place while the plaintiff was in a prison transport van driven by prison officers.  *Narvaez v.*

4    *Mendez*, No. 5:15-cv-02157-CAS-AFM, 2016 WL 11523381, at *7 (C.D. Cal. Nov. 15, 2016),

5    *report and recommendation adopted*, No. 2:15-cv-02157-CAS-AFM, 2016 WL 11524463 (C.D.

6    Cal. Dec. 20, 2016).  However, *Narvaez* is distinguishable because the plaintiff in that case was

7    being transported by state prison officials in a state-operated van from an outside medical

8    provider to the state prison at which he was incarcerated before and after the medical appointment

9    he was being transported to.  (*Id.* at *1.)  Here, plaintiff McClure was not in the custody of prison

10    officials or in a van owned by the state and operated by a state prison officials, but instead was in

11    a van operated by a private prison transportation company.

12    In *Stevens v. Goord*, No. 1:99-cv-11669-LMM-THK, 2003 WL 21396665 (S.D.N.Y. June

13    16, 2003), the district court concluded that in the absence of evidence suggesting "that plaintiff's

14    claims against [a private service provider] could have been handled internally within the

15    [Department of Correctional Services'] grievance procedure or even that the prison grievance

16    tribunal would have had any authority to take some responsive action," a plaintiff's claim against

17    a private company was not subject to the PLRA's administrative exhaustion requirements.  2003

18    WL 21396665, *5 (internal quotation and citation omitted).  It appears that defendants here seek

19    to have this court expand the application of administrative exhaustion to encompass such private

20    companies that provide services related to prisons.  In light of defendants' failure to present any

21    authority for such a proposition, the court declines to do so.

22    Accordingly, defendants' motion for summary judgment based upon plaintiff McClure's

23    alleged failure to first exhaust administrative remedies will be denied.

24    2.    Third and Fourth Causes of Action Pursuant to 42 U.S.C. § 1983:  Whether
        Defendants Were Deliberately Indifferent to Plaintiffs' Serious Medical Needs

25

26    In their third and fourth causes of action, plaintiffs assert that defendant Wheeler was

27    deliberately indifferent to their serious medical needs by failing to secure medical treatment for

28    /////

them during their transport to South Carolina and by his delay in freeing plaintiff McClure from the PTSA van after the multi-vehicle collision occurred in Modesto, California.

Where a prisoner's deliberate indifference claims arise in the context of medical care, the prisoner must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists where the failure to provide care could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A defendant is liable in connection with such a claim if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In this regard, "[i]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

In applying this standard, the Ninth Circuit has held that "the indifference to [the prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). For instance, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Furthermore, a prisoner's mere disagreement with a medical diagnosis or the treatment provided is insufficient to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may constitute deliberate indifference. *Estelle*, 429 U.S. at 104–05. To establish a claim of deliberate indifference arising from a delay in providing medical care, a plaintiff must show that the delay was harmful. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994). In this regard, "[a] prisoner need not show his harm was substantial;

however, such would provide additional support for the inmate's claim that the defendant was

deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096.  In addition, a failure to competently

treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate

indifference by a physician in a particular case.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

(9th Cir. 1989).

Claims for violations of the right to adequate medical care brought by pretrial detainees

are properly brought under the Fourteenth Amendment and "must be evaluated under an objective

deliberate indifference standard."  *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th

Cir. 2018).  To succeed on a deliberate indifference claim under the due process clause of the

Fourteenth Amendment, plaintiffs must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  The "mere lack of due care by a state official" is insufficient to prove the claim,

rather "the defendant's conduct must be objectively unreasonable" – "something akin to reckless

disregard."  *Id.*

Here, defendants argue that given the evidence presented on summary judgment, there

was "no [] purposeful act or failure to respond to a prisoner's pain or possible medical need or

that there was any harm caused by alleged indifference."  (Doc. Nos. 137-1 at 15; 138-1 at 18.)

Defendants contend that the delay in obtaining medical treatment for plaintiffs was due to their

inability to open the van doors immediately after the vehicle collision and did not rise to the level

of a constitutional violation because:  1) both defendant Wheeler and PTSA employee David

Hedrick made their best efforts to open the rear doors of the van to release plaintiffs; 2)

subsequent attempts to open the rear doors by law enforcement and emergency personnel were

also unsuccessful until fire truck personnel employed the "jaws of life" to free plaintiffs; and 3)

plaintiffs' own testimony establishes that once the van doors were opened, plaintiffs were

transported to a local hospital for treatment, which included receiving x-rays and pain medication from hospital staff.  (Doc. Nos. 137-1 at 15–16; 138-1 at 19.)  Furthermore, defendants contend they were not indifferent to plaintiffs' medical needs because plaintiffs received additional medical care at multiple stops throughout the remainder of their transport from California to their final destination.  (Doc. Nos. 137-1 at 16; 138-1 at 19–20.)  Defendants also contend that they lacked the required knowledge to support plaintiff McClure's claim of indifference to a serious medical need related to his genital injury allegedly suffered while attempting to urinate into a water bottle, because plaintiff McClure never informed defendant Wheeler or any medical personnel of his injury while he was in the custody of defendant Wheeler.  (Doc. No. 138-1 at 20.)  Defendants argue that there is no evidence on summary judgment that plaintiffs were harmed by the alleged delay in obtaining medical care because plaintiffs have not designated any medical expert witnesses and are not themselves qualified to offer such opinions.  (Doc. Nos. 137-1 at 17; 138-1 at 20.)  Finally, defendant PTSA argues there is no evidence before the court on summary judgment that its policies and procedures constitute the unnecessary or wanton infliction of pain in light of 34 U.S.C. §§ 60101 *et seq.*[7], statutory provisions that defendant contends "ensure security while transporting prisoners outside of secure facilities," because PTSA policies "require that PTSA employees take prisoners to the emergency room during a life-threatening emergency" and "allow[] PTSA employees to transport prisoners to the hospital on request."  (Doc. Nos. 137-1 at 17; 138-1 at 20.)

/////

---

[7]  Although defendant cites 34 U.S.C. §§ 60101 and 60104 in support of its contention that its policies and procedures do not unnecessarily or wantonly inflict pain upon prisoners, these statutes do not appear to support such a contention.  At most, 34 U.S.C. § 60101 identifies that prisoner transports can last days or weeks, that "[e]scapes by violent prisoners during transport by private prisoner transport companies have occurred[,]" and that oversight is necessary to address such problems.  34 U.S.C. § 60101(2)–(4).  Title 34 U.S.C. § 60103(c) dictates that private prisoner transport companies shall not be regulated under stricter standards than "the United States Marshals Service, Federal Bureau of Prisons, and the Immigration and Naturalization Service when transporting violent prisoners under comparable circumstances."  That subsection would appear to be inapplicable here, however, because plaintiffs contend that defendants violated their Eighth Amendment rights, a claim that can  be brought against the listed government agencies in comparable circumstances.

Plaintiffs counter by arguing that a genuine disputed issue of material fact has been established as to whether defendants were deliberately indifferent to their serious medical needs, citing plaintiffs' own depositions and declarations to support the following points:

- Defendant Wheeler allowed plaintiffs to stay in the hot van after they had suffered injuries in the Modesto collision rather than releasing them through the same exit from which he released the female passenger;

- Despite plaintiffs' numerous injuries, defendant Wheeler did not provide hospital staff sufficient time to adequately treat plaintiffs' injuries, causing plaintiff McClure's open sores not to be cleaned and bandaged, and instead encouraged hospital staff to release plaintiff to him if they "did not have broken bones;"

- Defendant Wheeler told Dr. Ajayi not to prescribe pain medication to plaintiffs because he lacked time to pick up any prescription medication;

- Plaintiff McClure did not receive bandages for his wounds until plaintiffs reached the custodial facility in Wichita, Kansas, days after the initial vehicular collision in Modesto, California;

- Defendant Wheeler subsequently forced plaintiff McClure to discard those bandages that had for the first time been applied to his wounds in Wichita, Kansas, and did not procure additional bandages for plaintiff McClure;

- Defendant Wheeler did not procure medical treatment for plaintiff McClure after he suffered a laceration to his genitals, an injury that plaintiff McClure contends defendant Wheeler was aware of even though plaintiff McClure did not directly inform defendant Wheeler of the injury; and

- Plaintiff McClure suffered "an infection, swelling, and severe stinging pain" for eight days until he received treatment at the Lexington County Detention Center in South Carolina.

(Doc. No. 154-1 at 9–13.)  Plaintiffs contend that the evidence presented on summary judgment establishes, at the very least, disputed issues of material facts as to defendants' deliberate indifference to their serious medical needs.  (*Id.* at 9.)  Plaintiffs also reject defendants'

1    contention that plaintiffs must designate medical expert witnesses in order to support their

2    medical indifference claim, contending that defendants bear the burden of proof in moving for

3    summary judgment and have not presented medical expert testimony "refuting plaintiffs' position

4    the [defendant] Wheeler was deliberately indifferent to plaintiffs' serious medical needs." (*Id.* at

5    13.)  Plaintiffs further argue that such expert testimony cannot be procured because "a medical

6    expert cannot testify as to a person's state of mind" and whether defendant Wheeler was

7    deliberately indifferent is a matter of his state of mind.[8]  (*Id.*)

8         In their reply, defendants argue that plaintiffs have not provided sufficient evidence to

9    demonstrate a genuine issue of material fact.  (Doc. No. 167 at 6.)  Defendants reiterate that

10   PTSA is not a medical provider, does not provide medical or hygiene care to prisoners, that such

11   care occurs at medical or custodial facilities, and that plaintiffs did receive medical care and pain

12   medication after being transported to the hospital following the collision.  (*Id.* at 7.)  Defendants

13   also repeat their contention that defendant Wheeler lacked knowledge of plaintiff McClure's

14   genital injury necessary to be held liable for medical indifference for failing to procure medical

15   treatment for that injury.  (*Id.*)

16        Reviewing the evidence presented on summary judgment, the court concludes that

17   disputed issues of material fact have been established precluding summary judgment as to

18   plaintiffs' medical indifference claim.  Despite defendants' arguments to the contrary, plaintiffs'

19   deposition testimony constitute sufficient evidence supporting the conclusion that disputed issues

20   of material facts have been shown to exist in that regard.  Although it appears undisputed that the

21   rear doors to the PTSA van could not be opened without employment of the jaws of life, plaintiff

22   McClure has testified at deposition that defendant Wheeler stated he could have, but declined to,

23   release plaintiffs from the van by opening the partition dividing the male and female passengers.

24   _____

25   [8]  The court disagrees with plaintiffs' contention in this regard.  Defendants do not argue that
     plaintiffs should have presented expert testimony as to defendant Wheeler's state of mind, but

26   rather as to whether plaintiffs had serious medical needs, which would be the proper subject of
     expert opinion.  Nonetheless, the court need not expand on plaintiffs' flawed argument on this

27   point because, as discussed below, the evidence on summary judgment establishes that there is a
     factual dispute regarding whether plaintiffs had serious medical needs that were unaddressed,

28   making resolution of that issue on summary judgment inappropriate.

(Doc. No. 137-3 at 83.)  Plaintiff Hubbard testified at deposition that while plaintiffs received treatment at the hospital immediately following the collision, defendant Wheeler told the doctors to "hurry up" and "[y]ou just need to release them." (*Id.* at 177.)  Additionally, plaintiff McClure testified that, despite being taken to the hospital immediately following the collision, the first time he received bandages and ointments for his injuries occurred days later at a custodial stop in Wichita, Kansas, and that he never received medical care at the other stops on the transport because the transport would always leave the custodial facilities at which they had stopped before the doctor arrived.  (*Id.* at 128.)  The parties also have submitted evidence disputing whether defendant Wheeler knew about plaintiff McClure's genital injury. (Doc. No. 154-1 at 12–13; 167 at 7.)

In light of the proffered evidence, a reasonable jury could find that defendant Wheeler intentionally made the decisions to:  (1) leave plaintiffs in the hot PTSA van post-collision rather than to release them from the van by dissembling the divider, (2) rush hospital staff to release plaintiffs prior to cleaning and bandaging of their wounds despite knowing that the plaintiffs had sustained injuries in the collision; (3) to leave custodial facilities early in the morning rather than wait for medical staff to provide care to plaintiffs in light of injuries sustained from the collision; and (4) to ignore plaintiff McClure's genital injury suffered during the transport.  *See Gordon*, 888 F.3d at 1125.  A reasonable jury could also find that defendant Wheeler's decisions placed plaintiffs at a risk of the wanton infliction of pain from their existing injuries, and that defendants did not take reasonable and available measures to abate that risk by procuring additional medical care for plaintiffs at custodial stops between the hospital in California and Kentucky.  *See id.* Defendants have not established that under the undisputed facts the delay in providing medical care to plaintiffs as they travelled from California to Kentucky was not harmful.  *See Berry*, 39 F.3d at 1057.  Indeed, plaintiff McClure testified that he suffered pain due to the delay in providing medical care, which a reasonable jury could find sufficient to establish the required harm.  *See Jett*, 439 F.3d at 1096 (holding that in showing harm from delayed medical care, "[a] prisoner need not show his harm was substantial").

/////

24

The court will therefore deny defendants' motion for summary judgment with respect to plaintiffs' third and fourth cause of actions brought pursuant to 42 U.S.C. § 1983 to the extent that claim is based on deliberate indifference to plaintiffs' medical needs.

3.   Plaintiffs' Third and Fourth Causes of Action:  Whether the Lack of Seatbelts in the PTSA Van Constitutes Deliberate Indifference

Defendants argue that summary judgment should be granted in their favor as to plaintiffs' § 1983 claims alleging inhumane conditions of confinement in violation of the Eighth Amendment arising from the lack of seatbelts in the PTSA van.  (Doc. No. 137-1 at 17; 138-1 at 21.)

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  In order to be found in violation of the Eighth Amendment, conditions of confinement must be objectively "sufficiently serious" and pose a "substantial risk of serious harm" to the prisoner.  *Farmer*, 511 U.S. at 834.  To succeed on a claim for a violation of the Eighth Amendment in connection with an alleged failure to protect, the plaintiff must demonstrate that defendants knew of and disregarded a substantial risk of serious harm to the plaintiff, thus subjectively "act[ing] with deliberate indifference to the inmates' health or safety."  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Farmer*, 511 U.S. at 847.

The Ninth Circuit has not had occasion to assess an Eighth Amendment deliberate indifference claim in the context of an alleged failure to secure an inmate's seatbelt during transport.  However, an unpublished Ninth Circuit memorandum decision has noted the possibility that such a claim may be cognizable.  *See, e.g., Ford v. Fletes*, 211 F.3d 1273, 2000 WL 249124 at *1 (9th Cir. 2000) (unpub.) ("Although the district court concluded that Ford failed to allege facts to show that defendants knew of and consciously disregarded an obvious risk to his safety when transporting him in the vehicle with his hands cuffed behind his back, . . . he may be able to allege facts to show such deliberate indifference.") (internal citations omitted).  Some courts have explicitly held that failing to provide a prisoner a seatbelt or to secure the same when provided during transport "does not, standing alone, give rise to a constitutional claim." *Jabbar v. Fischer*, 683 F.3d 54, 57–58 (2d Cir. 2012);  *Simon v. Clements*, No. 2:15-cv-04925-JLS-PLA,

25

2016 WL 8729781, at *1 (C.D. Cal. June 10, 2016) ("The law is clear that inmates who are transported by correctional officers do not have a constitutional right to the use of seat belts."); *Jamison v. YC Parmia Ins. Grp.*, No. 2:14-cv-01710-GEB-KJN, 2015 WL 8276333, at *3 (E.D. Cal. Dec. 9, 2015), *report and recommendation adopted*, No. 2:14-cv-01710-GEB-KJN, 2016 WL 11447606 (E.D. Cal. Jan. 25, 2016); *see also Thomas v. Rodriguez*, No. 3:16-cv-02211-AJB-JMA, 2017 WL 3896738, at *3–4 (S.D. Cal. Sept. 6, 2017) (collecting cases where the lack of safety restraints for prisoners during transport was found to support a claim of deliberate indifference).

"However, if [such a] claim is combined with allegations that the driver was driving recklessly, this combination of factors may violate the Eighth Amendment." *Wilbert v. Quarterman*, 647 F. Supp. 2d 760, 769 (S.D. Texas 2009); *see also Brown v. Fortner*, 518 F.3d 552, 559–60 (8th Cir. 2008) (denying summary judgment as to a prisoner's Eighth Amendment claims where the "uncontested evidence indicate[d] [defendant] knew [plaintiff] was shackled" and unable to secure his own seatbelt, defendant "rejected [plaintiff's] request for a seatbelt," and defendant "drove recklessly and ignored requests by inmate passengers to slow down."); *Ortiz v. Garza*, No. 1:15-cv-01370-DAD-JLT, 2016 WL 8730726 at *4 (E.D. Cal. 2016) ("Because Plaintiff alleges [Defendant] was aware the [shackled] prisoners did not have safety restraints, yet drove at high speeds and hit a stationary object, he alleges facts sufficient to [show] deliberate indifference to his safety in violation of the Eighth Amendment.").

Here, defendants argue that the lack of seatbelts in the PTSA van alone does not rise to the level of a constitutional violation, and that defendants' alleged acts and omissions were not sufficiently serious and did not post a substantial risk of serious harm to plaintiffs.  (Doc. Nos. 137-1 at 18–19; 138-1 at 22–23.)  Defendants emphasize that: (1) neither plaintiff knew how fast the PTSA van was travelling; (2) plaintiff Hubbard testified that the PTSA van merely "tapped the vehicle in front of it before being rear ended;" and (3) that plaintiff McClure testified that the traffic prior to the collision was congested and stop and go, that he could not estimate the speed the PTSA van was traveling at because he could not see the front, but believed that the van could not have traveled very quickly and that he believed defendant Wheeler applied the brakes prior to

1    the collision.  (Doc. Nos. 137-1 at 18–19; 138-1 at 22.)  Defendants contend that this evidence

2    "does not amount to sufficiently serious conduct which posed a substantial risk of harm, does not

3    demonstrate that Wheeler was even negligent, and certainly does not establish that Wheeler was

4    recklessly disregarding the rights of other with an appreciation of a high degree of risk involved."

5    (Doc. Nos. 137-1 at 19; 138-1 at 22–23.)

6          In opposition, plaintiffs argue that defendant PTSA's decision to use vans without

7    seatbelts for shackled prisoners "showed indifference to the physical wellbeing of such prisoners

8    and it posed a substantial risk of serious harm," pointing to the seatbelts equipped in the driver's

9    and passenger's seats as evidence that PTSA was aware of the dangers of driving without

10   seatbelts.  (Doc. No. 154-1 at 15.)  Plaintiffs rely on their TAC, declarations, and deposition

11   testimony to support their assertion that defendant Wheeler drove recklessly and with indifference

12   to plaintiffs' wellbeing.  (*Id.* at 16–18.)  In particular, plaintiffs emphasize that plaintiff Hubbard

13   has testified at deposition that defendant Wheeler as "driving like a bat out of hell," "driving too

14   fast for the road conditions . . . like he was in a rush," and that he was "scared to death" of

15   defendant Wheeler's lane switching and driving speed.  (*Id.* at 18.)  Plaintiffs also support their

16   contention that defendant Wheeler drove recklessly with deposition testimony that plaintiffs

17   asked Wheeler to slow down but their pleas were ignored.  (*Id.*)  Plaintiffs conclude that

18   defendant PTSA created an unreasonably dangerous condition by using transport vans without

19   seatbelts to transport shackled prisoners and that defendant Wheeler created an unreasonably

20   dangerous condition under those circumstances by driving recklessly.  (*Id.* at 19.)

21         In reply, defendants note that plaintiffs' reliance on their TAC, which is not a verified

22   complaint, is inappropriate at summary judgment.  (Doc. Nos. 167 at 7–8; 168 at 6–7.)

23   Defendants' reply otherwise reiterates many of the same arguments advanced in their moving

24   papers, notably that courts have found the mere lack of seatbelts in prisoner transports alone to be

25   insufficient to show a constitutional violation, that plaintiffs could not see the speedometer of the

26   PTSA van, that traffic was there congested just prior to the collision, and that the PTSA van

27   merely "tapped" the vehicle in front of it before being rammed into from behind.  (Doc. Nos. 167

28   at 8–9; 168 at 7–8.)

27

Defendants are correct that some federal courts have held that the lack of seatbelts or other safety restraints in a prisoner transport alone does not rise to the level of "substantial risk of serious harm" sufficient to constitute a violation of the Eighth Amendment. *See Jabbar*, 683 F.3d at 57–58 (lack of seatbelts during transport "does not, standing alone, give rise to a constitutional claim"); *Jamison v. YC Parmia Ins. Grp.*, 2015 WL 8276333, at *3 (same). However, such a claim may survive summary judgment if the plaintiff presents evidence that defendant knew that plaintiff was shackled, unable to secure a seatbelt, and defendant "drove recklessly and ignored requests by inmate passengers to slow down." *Brown*, 518 F.3d at 559–60. Here, it is undisputed that plaintiffs were shackled in the PTSA van that did not have seatbelts for their use. Plaintiffs point on summary judgment to deposition testimony, originally submitted by defendants as exhibits in support of their motion, that defendant Wheeler drove recklessly by speeding and weaving between lanes despite plaintiffs' requests for him to slow down. (Doc. No. 137-3 at 98:1–4, 102:25–103:23, 129:22–25, 158:5–10, 159:14–21, 160:5–7, 161:5–24, 162, 163:25–164:13.) Defendants object to that deposition testimony, arguing that plaintiffs appear to have contradicted their own testimony at other points in their deposition. (Doc. Nos. 167 at 8–9; 168 at 7–8.) But defendants' "objection" is nothing more than an argument attacking plaintiffs' credibility – an argument that is one to be made to the jury at trial. Defendants have failed to show the "absence of a genuine issue of material fact" as is necessary for them to obtain summary judgment in their favor on plaintiffs' claims. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 323). This dispute of as to whether defendant Wheeler purposely drove recklessly while knowing plaintiffs were shackled and did not have seatbelts in the PTSA van is one of material fact and for the fact finder to determine. *See Brown*, 518 F.3d at 559–60 (denying summary judgment where defendant ignored prisoners' protests and drove recklessly with shackled prisoners in the transport van who did not have seatbelts properly secured).

For the reasons explained above, defendants' motions for summary judgment on plaintiffs' third and fourth claims brought pursuant to § 1983 related to the lack of seat belts will be denied.

/////

4.      Third and Fourth Causes of Action Pursuant to § 1983:  Whether the Air
Conditioning in the PTSA Van and Defendant Wheeler's Attempt to Open the
Rear Doors Constituted Cruel and Unusual Punishment

Defendants argue that there is no evidence before the court on summary judgment that defendant Wheeler placed plaintiffs at substantial risk of serious harm due to the lack of air conditioning inside the PTSA van.  They note that defendant Wheeler testified at deposition that the PTSA van had air conditioning and plaintiff McClure testified at his deposition that there was a "working circulating fan" inside the van.  (Doc. Nos. 137-1 at 20; 138-1 at 23–24.)  Defendants also argue that defendant Wheeler was not deliberately indifferent or reckless to the risk of serious harm to plaintiffs with respect to the failure to open the rear doors of the van after the collision because the evidence shows that both defendant Wheeler and his PTSA coworker attempted unsuccessfully to open the rear doors shortly after the collision.  (Doc. Nos. 137-1 at 20; 138-1 at 24.)  Plaintiffs did not address defendants' arguments in this regard in their opposition to the pending motion.  (*See* Doc. No. 154-1.)

The undisputed evidence shows that the PTSA van was equipped with air conditioning and a circulating fan.  (Doc. Nos. 137-3, Exh. B, Deposition of Cleveland Wheeler at 36:21–37:4; 137-3, Exh. C, Deposition of Terry McClure at 61:18–62:2.)  The undisputed evidence, including plaintiffs' deposition testimony, also establishes that PTSA employee Hedrick made three attempts to open the PTSA van rear door immediately after the collision, that defendant Wheeler joined him in attempting to open the door only a few minutes later, and that all attempts were unsuccessful until firetruck personnel used the jaws of life to open the door.  (Doc. Nos. 137-3, Exh. B, Wheeler Depo. at 46:7–11, 48:9–20, 50:1–6; 137-3, Exh. C, McClure Deposition at 91:20–92:5, 94:12–19, 95:3–21, 97:13–20, 99:21–100:23; 137-3, Exh. D, Deposition of Dustin Hubbard at 119:14–25, 122:25–123:14, 124:4–10.)  In light of the evidence submitted by defendants on summary judgment supporting their contentions in this regard, the court will grant defendants' motions for summary judgment as to plaintiffs' third and fourth causes of actions pursuant to 42 U.S.C. § 1983 related to the air conditioning and defendants' attempts to open the rear doors to the PTSA van after the collision.

29

1

2

3

     5.     <u>Third and Fourth Causes of Action Pursuant to 42 U.S.C. § 1983:  Whether Defendant PTSA's Policies and Procedures and Defendant Wheeler's Actions Regarding Restroom Breaks Were Deliberately Indifferent or Reckless</u>

4

5

6

     Defendants seek summary judgment in their favor as to plaintiffs' claims that defendant PTSA's policies deprived prisoners such as plaintiffs of bathroom breaks during transport in violation of the Eighth Amendment.  (Doc. No. 138-1 at 21.)

7

8

9

10

11

12

13

14

15

16

17

     To state a cause of action for a deprivation of necessities in violation of the Eighth Amendment, "extreme deprivations [of necessities] are required," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), since only grave deprivations of life's necessities violate the Cruel and Unusual Punishment Clause.  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).  "The circumstances, nature, and duration of a deprivation of [minimal] necessities must be considered in determining whether a constitutional violation has occurred."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th. Cir. 2000).  "[L]ack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), *as amended*, 75 F.3d 448 (9th Cir. 1995), and "[t]he more basic the need, the shorter the time it can be withheld."  *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982).

18

19

20

21

22

23

24

25

26

27

28

     However, a temporary delay in allowing a prisoner to use a restroom falls short of a constitutional violation.  *Johnson*, 217 F.3d at 733 (recognizing that "toilets can be unavailable for some period of time without violating the Eighth Amendment"); *Salinas v. County of Kern*, No. 1:18-cv-00235-BAM, 2018 WL 5879703, at *4 (E.D. Cal. Nov. 7, 2018) ("[D]eni[al] [of] access to a restroom and water for approximately nine hours on a single day is insufficient to state a claim upon which relief may be granted."); *Myers v. Transcor Am., LLC*, No. 3:08-cv-00295-AAT-JEG, 2010 WL 3619831, at *8–9 (M.D. Tenn. Sept. 9, 2010), *report and recommendation adopted*, No. 3:08-cv-00295-AAT-JEG, 2010 WL 3824083 (M.D. Tenn. Sept. 30, 2010) ("infrequent bathroom breaks . . . simply fail to evidence the type of living conditions which are so extreme as to violate contemporary standards of decency and, thus, the objective component of the Eighth Amendment claim has not been satisfied.").

1    Defendants contend that summary judgment in their favor is appropriate in this case

2  because PTSA's policies and procedures provide that restroom breaks should be conducted every

3  four hours, but must occur at a secure detention facility, even if the distance between facilities

4  takes longer than four hours to traverse.  (Doc. Nos. 137-1 at 20–21; 138-1 at 24.)  Defendants

5  note that although plaintiffs have testified to urinating in water bottles in the PTSA van, plaintiffs

6  also testified to taking multiple restroom stops as well as overnight stays at various medical and

7  detention facilities during their lengthy transport trip, and that plaintiff Hubbard had guessed that

8  the longest time between restroom breaks was approximately six hours.  (Doc. Nos. 137-1 at 21;

9  138-1 at 24.)  According to defendants, these facts do not rise to the level of deliberate

10  indifference or recklessness because a single instance "where the time between restroom breaks

11  was six hours" does not support a constitutional claim for deprivation of life's necessities.  (*Id.*)

12    Plaintiffs argue that they "suffered humiliation in that they were forced to use water

13  bottles to relieve themselves" within view of other prisoners and that this deprivation of bathroom

14  stops constitutes a violation of the Eighth Amendment.  (Doc. No. 154-1 at 19. (citing *Hope v.*

15  *Pelzer* 536 U.S. 730 (2002)).)  Plaintiffs also rely on the decision in *Stearn v. Inmate Services*

16  *Corp.*, 957 F. 3d 902, 904 (8th Cir. 2020), in which the Eighth Circuit reversed the district court's

17  granting of summary judgment in favor of defendants based upon its finding that disputed issues

18  of material fact as to whether the private transport company's policies and customs caused a

19  violation of the plaintiff's constitutional rights in connection with an eight-day long essentially

20  non-stop transport across 12 states with only momentary restroom breaks.  (*Id.* at 19–20.)

21  Plaintiffs argued here that the decision in *Stearn* supports their contention that defendants are not

22  entitled to summary judgment in this case.  (*Id.*)  Plaintiffs contend that whether defendants

23  afforded plaintiffs sufficiently frequent restroom breaks during their transport is a question of fact

24  for the jury.  (*Id.* at 20.)

25    In their reply briefs, defendants reiterate that the undisputed facts before the court on

26  summary judgment demonstrate that plaintiffs' transport trips at issue here included multiple

27  restroom breaks and overnight stops at medical and detention centers, thus distinguishing this

28  case from those plaintiffs rely upon.  (Doc. Nos. 167 at 10; 168 at 8–9.)  Defendants note that the

1   circumstances addressed by the Supreme Court in *Hope* are clearly factually inapposite:  the

2   plaintiff in that case was attached to a hitching post by guards, stripped of his shirt, and left there

3   for seven hours with barely any water and no restroom breaks, whereas in the instant case,

4   plaintiffs were provided water, some restroom breaks, and multiple overnight stays.  (Doc. Nos.

5   167 at 10; 168 at 8 (citing *Hope*, 536 U.S. 730)).  Defendants also contend that the appellate

6   court's decision in *Stearn* does not support plaintiffs' argument that whether infrequent restroom

7   stops provided to prisoners during transport are sufficient is a factual issue for a jury to decide,

8   and that *Stearn* is also factually inapposite because, in contrast to the multiple overnight and

9   several restroom stops that defendants PTSA and Wheeler made here, the prison transport

10   company in that case drove continuously and made no overnight or lengthy stops at all during a

11   multi-day trip.  (*Id.* (citing *Stearn*, 957 F.3d 902.))

12        Defendants' arguments are well-taken.  It is undisputed in this case on summary judgment

13   that defendant PTSA had policies and procedures in place providing for restroom breaks every

14   four hours at secure detention facilities.  (Doc. No. 137-2 at ¶ 6.)  It is also undisputed that

15   restroom breaks were sometimes provided less frequently than every four hours where the

16   distance between two secure detention facilities required more than four hours of travel, and that

17   there was at least one instance in which the time between bathroom breaks was approximately six

18   hours.  (*Id.* at ¶¶ 35–37.)  Although plaintiffs have offered evidence that they urinated in water

19   bottles in the PTSA van between restroom breaks, plaintiffs also testified that they were provided

20   at least three restroom stops in addition to overnight stays at facilities throughout the transport

21   trip, with the longest time between restroom breaks estimated by plaintiffs themselves to be six

22   hours.  (*Id.* at ¶¶ 35–37.)  Such a temporary delay in providing restroom breaks, shorter than even

23   the nine-hour delay in *Salinas* where no cognizable claim was found to be stated, is an

24   insufficient basis upon which to find a constitutional violation as a matter of law.  *See Johnson*,

25   217 F.3d at 7; *see also Salinas,* 2018 WL 5879703, at *4 (concluding that single denial of water

26   and restroom access for nine hours in one day is insufficient to even state a cognizable

27   constitutional claim).  Of course, here, plaintiffs do not allege that they were completely denied

28   restroom access, only that their restroom access was restricted to the location of secure facilities.

1    Under the evidence on summary judgment in this case, such a restriction on restroom access does

2    not give rise to a constitutional violation.  *See Schilling v. TransCor Am., LLC*, No. 3:08-cv-

3    00941-SI, 2012 WL 3257659, at *9 (N.D. Cal. Aug. 8, 2012) (holding that defendant's policy of

4    "not allowing prisoners at-will use of the toilets, instead restricting use to every 3.5 to 4 hours"

5    did not impose a constitutional deprivation of minimal hygiene).  The fact that "the conditions in

6    the transport vans were undisputedly temporary in nature," lasting only until the end of each

7    plaintiff's transport trip, in conjunction with the restroom and overnight breaks plaintiffs were

8    provided, also "weigh against any possible conclusion that a constitutional violation occurred."

9    *Myers*, 2010 WL 3619831, at *9.

10          The decisions relied upon by plaintiffs do not compel a different conclusion.  In *Hope*, the

11   Supreme Court held that the deprivation of restroom breaks created a "risk of particular

12   discomfort and humiliation" to the plaintiff, who was tied to a hitching post and placed on display

13   by the defendant guards, taunted, refused water and restroom breaks for seven hours.  *Hope*, 536

14   U.S. at 739.  Here, there is no evidence that defendant Wheeler made an intentional choice to

15   withhold restroom breaks from plaintiffs in an attempt to humiliate them or to cause them

16   discomfort.  *See Gordon*, 888 F.3d at 25 (intentional indifference requires that defendant make

17   "an intentional decision with respect to the conditions under which the plaintiff was confined").

18   Rather, the evidence on summary judgment suggests that restroom breaks were delayed during

19   the transport in keeping with policy due to the distances between secure detention facilities,

20   something which defendant Wheeler had no control over.  Likewise, the decision in *Stearn* does

21   not support plaintiffs' proposition that whether infrequent restroom stops provided to prisoners

22   during transport are constitutionally sufficient is always a factual issue.  *Stearn*, 957 F. 3d at 902,

23   909.  In that case the appellate court reversed the granting of summary judgment because (i) the

24   evidence was that plaintiff had been subjected to the conditions at issue for a longer period of

25   time than necessary to complete his transport, and (ii) a disputed question of fact remained as to

26   whether defendants' policies caused the unnecessary additional time to which plaintiff was

27   subjected to those conditions.  *Id.* at 909–10.  Here, by contrast, no party has argued that the

28   /////

33

1  transport period for plaintiffs was artificially extended by defendant PTSA's policies, such that

2  plaintiffs were subjected to restricted restroom use for an unnecessarily long period of time.

3     For these reasons, the court will grant defendants' motions for summary judgment as to

4  plaintiffs' third and fourth causes of action brought pursuant to 42 U.S.C. § 1983 arising from

5  their allegations challenging the frequency of the bathroom breaks they were provided.

6     6.     Whether Defendant Wheeler is Entitled to Summary Judgment on Qualified
            Immunity Grounds as to Plaintiffs' Third Cause of Action Brought Under § 1983
7

8     Above, the court has concluded that based upon the evidence presented by the parties, a

9  reasonable trier of fact could find in plaintiffs' favor with respect to their third cause of action

10  under § 1983, except to the extent that claim arises from the alleged infrequency of bathroom

11  breaks.  However, defendant Wheeler has also moved for summary judgment in his favor with

12  respect to this cause of action on qualified immunity grounds.

13     "The doctrine of qualified immunity shields officials from civil liability so long as their

14  conduct does not violate clearly established statutory or constitutional rights of which a

15  reasonable person would have known."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal

16  quotations omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); and *Harlow v.*

17  *Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.

18  2003); *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001).  When an affirmative defense based

19  upon a claim of qualified immunity is presented, the central questions for the court are:  (1)

20  whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

21  defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

22  was "clearly established" at the time of the event in question.  *Saucier v. Katz*, 533 U.S. 194, 201

23  (2001); *accord Pearson*, 555 U.S. at 236–42 (holding that courts need not analyze the two prongs

24  of the analysis announced in *Saucier* in any particular order).

25     "A Government official's conduct violates clearly established law when, at the time of the

26  challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

27  official would have understood that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*,

28  563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 (1987)).  In this regard, while a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741); *see also A. K. H. by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016); *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." (quoting *Saucier*, 533 U.S. at 202)).  "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742). This inquiry must be undertaken in light of the specific context of the particular case, rather than as a broad general proposition. *Id.*; *Saucier*, 533 U.S. at 201.

Defendant Wheeler argues that he is entitled to summary judgment on qualified immunity grounds because the Supreme Court has held that "private employees retained by a city to assist with official investigation into potential wrongdoing are entitled to protection of qualified immunity." (Doc. Nos. 137-1 at 21–22; 138-1 at 25 (citing *Filarsky v. Delia,* 566 U.S. 377, 394 (2012)).)  Defendant Wheeler also contends that at the time of the multi-vehicle collision in this case, there was "no existing precedent that placed the statutory or constitutional question related to access to medical care, seatbelts, or bathroom breaks during interstate prisoner transport beyond debate" such that "the particular rights that Wheeler and PTSA allegedly violated were not clearly established at the time of Hubbard's transport."  (Doc. Nos. 137-1 at 22; 138-1 at 26.)

In opposition, plaintiffs first argue that defendant Wheeler is not entitled to summary judgment on qualified immunity grounds because he is not a government official.  (Doc. No. 154-1 at 20–21.)  Plaintiffs point out that the Supreme Court has held, for instance, that private prison guards are not entitled to qualified immunity in an action brought under § 1983.  (*Id.* at 21 (citing *Richardson v. McKnight*, 521 U.S. 399, 412 (1997)).)  Plaintiffs additionally argue that qualified immunity would not apply even if defendant Wheeler was a government actor because prior caselaw established that "depriving inmates of adequate bathroom breaks can constitute a violation of the Eighth Amendment" and that "a failure to provide adequate medical treatment is a

/////

1    violation of the Eighth Amendment is well established," and that defendant Wheeler engaged in

2    both of these unconstitutional actions.  (*Id.* at 22.)

3         In reply, defendant Wheeler argues that because defendant PTSA was "performing an

4    'exclusive government function,' something it could not have done without authorization from

5    the state," that defendant Wheeler, as a PTSA employee, must be viewed as a government official

6    entitled to qualified immunity.  (Doc. Nos. 167 at 11; 168 at 9.)  Defendant Wheeler contends that

7    "[v]arious district courts have allowed plaintiffs to proceed in claims brought pursuant to § 1983

8    against private corporations that provide prison transport services."  (*Id.* at 9 (*Schilling v.*

9    *TransCor America, LLC*, No. 3:08-cv-00941-SI, 2008 WL 3463510 (N.D. Cal. Aug. 11, 2008);

10   *Dailey v. Hunter*, No. 2:04-cv-00392-FTM-DNF, 2006 WL 4847739 (M.D. Fla. Mar. 22, 2006);

11   *Irons v. TransCor America, Inc.*, No. 2:01-cv-04328-MAM, 2006 WL 618856 (E.D. Pa. March 9,

12   2006)).)  Defendants also assert that plaintiffs have failed to establish any clearly established

13   constitutional right under then existing legal precedent that "placed the statutory or constitutional

14   question beyond debate" such that qualified immunity would not apply here.  (Doc. Nos. 167 at

15   11; 168 at 9.)

16       Defendants appear to be seeking the expansion of the doctrine of qualified immunity to

17   encompass private prison transport companies and their employees.  The court declines to do so.

18   Plaintiffs have correctly noted that defendants failed to cite any authority for the proposition that

19   defendant Wheeler is a government official entitled to qualified immunity.  (*See* Doc. Nos. 137-1,

20   138-1.)  The cases defendants cite in their reply briefs do not support their assertion that

21   defendant Wheeler is a government official entitled to qualified immunity because plaintiffs have

22   brought § 1983 claims against private prison transport services.  In both *Schilling* and *Dailey,* the

23   district court were addressing motions to dismiss and did not touch upon the issue of qualified

24   immunity.  See *Schilling*, 2008 WL 3463510 at *1–2; *Dailey*, 2006 WL 4847739, *3–4.  In *Irons*,

25   the district court did conclude that there was a genuine question of material fact as to whether the

26   private prison transport company in that case could be fairly said to be state actor.  2006 WL

27   618856 at *3.  However, the decision in that case did not address the issue of whether the

28   qualified immunity doctrine might apply in that context.  *See id.*  Moreover, there appears to be

1   no authority for the proposition that employees of private prison transport companies are

2   government officials entitled to qualified immunity from suit.  Rather, the Supreme Court has

3   held that although state prisoners "enjoy a right of action against private correctional providers

4   under 42 U.S.C. § 1983," *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 n.5 (2001),

5   private prison guards are not entitled to qualified immunity from suits under § 1983 because

6   "history does not reveal a 'firmly rooted' tradition of immunity applicable to privately employed

7   prison guards," *Richardson v. McNight*, 521 U.S. 399, 404–05 (1997).

8        Therefore, the undersigned concludes that defendant Wheeler is not entitled to qualified

9   immunity—even though plaintiffs can maintain a § 1983 suit against him—because there is no

10   "firmly rooted tradition of immunity" applicable to privately employed individuals carrying out

11   prisoner transports.  *See id.*  Accordingly, defendants' motions for summary judgment on

12   qualified immunity grounds will be denied.

13        7.   Whether Plaintiffs' Fourth Cause of Action against Defendant PTSA Establishes a
          *Monell* Claim

14

15        Defendants have also moved for summary judgment on plaintiffs' fourth cause of action

16   against defendant PTSA pursuant to 42 U.S.C. § 1983, arguing that plaintiffs have not come

17   forward with evidence sufficient to prevail on a *Monell* claim against defendant PTSA.

18        It is well-established that "a municipality cannot be held liable solely because it employs a

19   tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

20   *superior* theory."  *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *see also*

21   *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  The Ninth Circuit has held there is

22   "no basis in the reasoning underlying *Monell* to distinguish between municipalities and private

23   entities acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th

24   Cir. 2012).  To state a *Monell* claim, plaintiffs must allege "that an 'official policy, custom, or

25   pattern' on the part of [defendant] was 'the actionable cause of the claimed injury.'"  *Id.* at 1143

26   (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).  A *Monell* claim

27   can be established in one of three ways.  *Thomas v. County of Riverside*, 763 F.3d 1167, 1170

28   (9th Cir. 2014).  First, a local government may be held liable when it acts "pursuant to an

1    expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982

2    (9th Cir. 2004).  Second, a public entity may be held liable for a "longstanding practice or

3    custom."  *Thomas*, 763 F.3d at 1170.  Such circumstances may arise when, for instance, the

4    public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or

5    when it fails to adequately train its employees.  *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*,

6    954 F.2d 1470, 1477 (9th Cir. 1992)).  "Third, a local government may be held liable under

7    § 1983 when 'the individual who committed the constitutional tort was an official with final

8    policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or

9    action and the basis for it.'"  *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir.

10   2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other*

11   *grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070  (9th Cir. 2016) (*en banc*).

12       Although their moving papers do not explicitly so state, defendants appear to construe

13   plaintiffs' fourth cause of action as fitting under the second *Monell* category and they argue that

14   defendant PTSA can only be held liable under § 1983 if "itself causes the constitutional violation"

15   through its policies or customs.  (Doc. Nos. 137-1 at 23; 138-1 at 26–27. (citing *Monell*, 436 U.S.

16   at 694.)  Defendants contend that PTSA's policy "that prisoners are not be [sic] secured to a

17   vehicle in motion" did not cause the alleged violation of plaintiffs' constitutional rights here

18   because it is also PTSA's policy that "its agents to operate vehicles in such a way as to maximize

19   the safety and security of prisoners and agents alike" and that its agents also complete defensive

20   driving training.  (Doc. Nos. 137-1 at 23–24; 138-1 at 28.)  In addition, defendants assert that

21   PTSA's restroom break policies are reasonable because "they conform with applicable law and

22   take safety of the public into consideration."  (Doc. Nos. 137-1 at 25; 138-1 at 29.)  Defendants

23   further argue that plaintiffs did not identify any longstanding policy, procedure, or practice that

24   "rose to the level of cruel or unusual punishment" or any evidence that any such policy or custom

25   violated their constitutional rights.  (Doc. Nos. 137-1 at 26; 138-1 at 29.)  Finally, defendants

26   contend that plaintiffs cannot satisfy the elements of a *Monell* claim because they have failed

27   present evidence on summary judgment establishing that any constitutional violation, referencing

28   their arguments addressed earlier in this order.

In response, plaintiffs argue that they are not required to prove that defendant PTSA's policies and customs caused the asserted constitutional violations pursuant to *Monell*, which only applies to municipalities, because defendant is not a government entity.  (Doc. No. 154-1 at 23 (citing *Monell*, 436 U.S. at 691.))  Plaintiffs also contend that even if *Monell* principles applied to their fourth cause of action, the evidence on summary judgment is such that a reasonable jury could conclude that defendant PTSA had explicit policies of restraining prisoners and denying them seatbelts during transport, as well as a practice of "transporting inmates in inhumane conditions," including deprivation of restroom breaks and "fail[ure] to provide them with proper medical care."  (*Id.* at 24 (citing a number of lawsuits brought against PTSA.))  Plaintiffs contend that such policies and customs caused the violation of plaintiffs' constitutional rights in the instant case.  (*Id.* at 23.)

In reply, defendants argue that *Monell* applies here because PTSA is a state actor "performing an 'exclusive government function'" and is subject to liability under 42 U.S.C. § 1983.  (Doc. Nos. 167 at 11–12; 168 at 10.)  Defendants also object to plaintiffs' reliance on allegations in other civil actions brought against defendant PTSA and point out that the complaints in those cases were dismissed pursuant to Rule 12(b)(6).  (*Id.*) (citing *Brady v. Ogg*, No. 4:19-cv-01850-GHM, 2020 WL 3452253 (S.D. Tex. June 24, 2020) (where the plaintiff's *Monell* claim against PTSA was dismissed)).

> ### a.   *Monell* Governs Plaintiffs' Fourth Cause of Action against PTSA

"Whether *Monell* applies to suits against private entities under § 1983 is a threshold question" with regard to plaintiffs' fourth cause of action against defendant PTSA.  *Tsao*, 698 F.3d at 1139 (joining eight sister circuits in so holding).  The Ninth Circuit has held that the requirements of *Monell* apply to § 1983 claims brought against private entities when they are acting under the color of state law.  *Id.* ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.").  As recognized by the Ninth Circuit, "[t]he Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action:  (1) the public function test; (2) the
/////

1    joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Id.* (quoting

2    *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002)).

3           Here, defendant PTSA is a private prison transport corporation.  Neither party disputes

4    that defendant PTSA may be held liable under § 1983, and in their briefs both parties argue that

5    defendant PTSA is subject to suit because it "performs exclusively government functions, which

6    they could not have done without authorization from the state."  (Doc. Nos. 154-1; 167 at 11–12;

7    168 at 10); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982).  Therefore,

8    defendant PTSA acted under the color of state law and plaintiff must present evidence on

9    summary judgment satisfying *Monell's* requirements in order to proceed on their fourth cause of

10   action brought against defendant PTSA pursuant to § 1983.[9]

11             *b.  Whether Defendant PTSA's Official Policies, Customs, or Patterns Caused
                    Plaintiffs' Constitutional Violations*
12

13          The court now turns to the issue of whether plaintiffs have satisfied the requirements of

14   *Monell* by coming forward with evidence demonstrating that an "official policy, custom, or

15   pattern" on the part of defendant PTSA was "the actionable cause of the claimed injury."  *Harper*,

16   533 F.3d at 1022, 1026.

17          "Liability for improper custom may not be predicated on isolated or sporadic incidents; it

18   must be founded upon practices of sufficient duration, frequency and consistency that the conduct

19   has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th

20   Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001);

21   *see also Gordon v. County of Orange,* 6 F.4th 961, 974 (9th Cir. 2021) ("Generally, 'a single

22   incident of unconstitutional activity is not sufficient to impose liability under *Monell*.'") (quoting

23

24   ---
     [9]  Contrary to defendants' contention, a closer review of the district court's decision in *Brady*
     reveals that PTSA was dismissed as a defendant in that case not on *Monell* grounds, but because
25   the court found that the plaintiff had failed to allege sufficient facts supporting the assertion that
     PTSA was a state actor for purposes of a § 1983 claim.  Here, defendants have not raised the issue
26   as to whether they may be held liable under 42 U.S.C. § 1983.  Defendants have also provided no
     authority to support their contention that a private prison transport company constitutes a
27   municipality such that plaintiffs' § 1983 claim against defendant PTSA is subject to the
     requirements of *Monell*.  (*See* Doc. Nos. 137-1, 138-1, 136, 138.)  Defendants' failures in this
28   regard, however, do not alter the court's conclusion as stated above.

1   *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)); *Christie v. Iopa*, 176 F.3d 1231,

2   1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a

3   longstanding practice or custom.").[10]

4         A "policy" is "'a deliberate choice to follow a course of action . . . made from among

5   various alternatives by the official or officials responsible for establishing final policy with

6   respect to the subject matter in question.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185

7   (9th Cir. 2006) (alteration in original) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.

8   2002)). There are two types of policies: (1) policies of action, which "result in the municipality

9   itself violating someone's constitutional rights or instructing its employees to do so," and (2)

10  policies of inaction, which result, "through omission, in municipal responsibility for a

11  constitutional violation committed by one of its employees, even though the municipality's

12  policies were facially constitutional, the municipality did not direct the employee to take the

13  unconstitutional action, and the municipality did not have the state of mind required to prove the

14  underlying violation." *Tsao*, 698 F.3d at 1143 (internal quotations omitted).

15        "A policy of inaction or omission may be based on failure to implement procedural

16  safeguards to prevent constitutional violations." *Id.* (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477

17  (9th Cir. 1992)). To establish that there is a policy based on a failure to preserve constitutional

18  rights, a plaintiff must show, in addition to a constitutional violation, "that this policy amounts to

19  deliberate indifference to the plaintiff's constitutional right[,]" *id.* at 1474 (internal quotations

20  omitted), and that the policy caused the violation, "in the sense that the [municipality] could have

21  prevented the violation with an appropriate policy." *Gibson v. County of Washoe*, 290 F.3d 1175,

22  1194 (9th Cir. 2002).

23        Here, plaintiffs have not presented evidence that defendant PTSA's policies caused their

24  constitutional violations. The proffered evidence demonstrates that defendant PTSA has explicit

25  policies of restraining inmates, not providing them seatbelts during transport, and procuring

26  _____

27  [10] However, and although not at issue here, it has also been recognized that "a municipality can
    be liable for an isolated constitutional violation when the person causing the violation has final
    policymaking authority." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (quoting *Christie v.*
28  *Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999)).

1   medical care for inmates only at medical and detention facilities from trained medical staff

2   facilities, which defendants do not dispute. (*See* Doc. Nos. 137-1 at 23–24; 138-1 at 28; 154-1 at

3   24.) However, plaintiffs' argument that their constitutional rights were violated by being

4   shackled with no seatbelts in the PTSA van are dependent upon and intertwined with their

5   contention that defendant Wheeler drove recklessly during the transport despite those other

6   conditions. The evidence presented on summary judgment does not suggest, let alone show, that

7   defendant PTSA had a policy of inaction that permitted reckless driving of transport vans.

8   Rather, as defendants assert, the evidence before the court establishes that PTSA has taken steps

9   to alleviate any reckless driving by its employees by implementing explicit policies and

10   procedures requiring "its agents to operate vehicles in such a way as to maximize the safety and

11   security of prisoners and agents alike" and to complete training on defensive driving. (*See* Doc.

12   Nos. 137-1 at 23–24; 138-1 at 28.); *cf. Oviatt*, 954 F.2d AT 1477 (holding that there "is also no

13   question that the decision not to take any action" to alleviate the problem of missed arraignments,

14   which is contrary to state law, "constitutes a policy for purposes of § 1983 municipal liability.")

15   Similarly, plaintiffs have not come forward with evidence showing that defendant PTSA's policy

16   that medical care be procured at medical and detention facilities from trained medical staff leads

17   to deliberate indifference to the medical needs of prisoners rising to the level of a constitutional

18   violation. Although plaintiffs cite to allegations in other lawsuits brought against defendant

19   PTSA, mere allegations without supporting evidence are insufficient at the summary judgment

20   stage of litigation, and plaintiffs have proffered no evidence that defendant's implementation of

21   its policy gave rise to such a pattern of constitutional deprivation such that it is a policy of

22   inaction creating liability in a § 1983 action such as this one. (*See* Doc. Nos. 137-1 at 23–24;

23   138-1 at 28; 154-1 at 24); *compare Christie*, 176 F.3d at 1235 ("A single constitutional

24   deprivation ordinarily is insufficient to establish a longstanding practice or custom.") *with Berry*

25   *v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004) (holding that defendant's implementation of policies

26   that led to widespread delays in release—and the lack of policies to expedite the process—could

27   support a § 1983 claim).

28   /////

Therefore, defendants' motions for summary judgment as to plaintiffs' § 1983 claim against defendant PTSA under *Monell* will be granted.

        8.    <u>Plaintiffs' Fifth and Sixth Causes of Action for Intentional Infliction of Emotional Distress:  Whether Defendants' Conduct was Extreme and Outrageous</u>

To prevail on a claim of intentional infliction of emotional distress under California law, a plaintiff must show:  (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress.  *Argawal v. Johnson*, 25 Cal. 3d 932, 946 (1979).

Conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," that is "regarded as atrocious and utterly intolerable in a civilized community," or that "has gone beyond all bounds of decency."  *Davidson v. City of Westminster,* 32 Cal. 3d 197, 209 (1983); *see also Nally v. Grace Community Church*, 47 Cal. 3d 278, 300 (1988); *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 231 (1983). The defendant's conduct must be directed at, or occur in the presence of, the plaintiff, and defendant must have been aware of the plaintiff's presence.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001–02 (1993); *Spinks v. Equity Residential Briarwood Apartments*, 71 Cal. App. 4th 1004, 1045 (2009).  "Where reasonable men can differ, the jury determines whether the conduct has been extreme and outrageous as to permit recovery."  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1605 (2012).

Here, defendants contend that they are entitled to summary judgment in their favor as to plaintiffs' IIED claim because, as a matter of law, their actions were not "outrageous."  (Doc. Nos. 137-1 at 27–29; 138-1 at 31–32.)  However, plaintiffs' claims against defendant Wheeler are supported by their testimony that defendant Wheeler drove recklessly, did not procure medical care for them after the initial stop at a hospital, and limited what medical treatment they did receive.  (Doc. Nos. 154-1 at 9–13; 137-3 at 83, 177.)  On the other hand, there is evidence before the court on summary judgment that defendant Wheeler attempted to open the rear doors of the PTSA van after the collision and did procure medical care for plaintiffs immediately after that

collision and during their overnight stay in Wichita, Kansas.  (Doc. Nos. 137-1 at 15–16; 138-1 at 19–20.)  Given this evidence, the court concludes that a reasonable jury could find either for plaintiffs or defendant Wheeler in resolving the question of whether those actions, particularly in regard to plaintiffs' medical needs, exceeded the bounds of decency to the point of being intolerable in a civilized society.  *See Potter*, 6 Cal. 4th at 1001–02.  Summary judgment is therefore not appropriate as to plaintiffs' intentional infliction of emotional distress claim against defendant Wheeler.  *See Plotnik,* 208 Cal. App. 4th at 1605 (reserving resolution of the question of whether the conduct alleged was outrageous for the jury "[w]here reasonable men can differ").

Furthermore, if a jury were to find that defendant Wheeler's conduct was outrageous and concludes that he is liable for IIED, defendant PTSA could be subject to vicarious liability for that same conduct.  *See Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296–97 (1995) ("[A]n employer is vicariously liable for the torts of its employees committed within the scope of the employment . . . even though the employer has not authorized the employee to commit crimes or intentional torts.").  Although the parties here do not dispute that defendant Wheeler's actions were taken within the scope of his employment, the court cannot resolve defendant PTSA's vicarious liability on summary judgment when defendant Wheeler's liability depends on disputed issues of material fact.

For the reasons explained above, the court will deny defendants' motions for summary judgment as to plaintiffs' fifth and sixth causes of action for intentional infliction of emotional distress.

9.   Whether Plaintiffs May Seek Punitive Damages

Finally, plaintiffs seek the award of punitive damages against defendants, asserting that defendants acted with malice and oppression and in reckless disregard of plaintiffs' rights.  (Doc. No. 83 at 26.)  Defendants seek summary judgment in their favor with regard to plaintiffs' prayer for punitive damages, arguing that plaintiffs have failed to present any evidence that defendants exhibited the requisite malice, recklessness, or oppression.  (Doc. Nos. 137-1 at 29–32; 138-1 at 33–35.)  These arguments are unpersuasive.

/////

In California, punitive damages are available where the claimant proves by clear and convincing evidence that the other party "has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a); *see also id.* § 3294(c) (defining "malice" and "oppression").  California courts have generally construed this language to mean "intent to injure or willful and conscious disregard of others' rights."  *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).  To the extent a reasonable jury could find that the defendants engaged in willful, deceptive, or outrageous conduct against plaintiffs, it could also conclude that the award of punitive damages is warranted. *See Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 409 (2009) ("Punitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct."); *Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) ("[W]e have recognized that [i]t is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." (internal quotations omitted)); *Sprinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1055 (2009) ("Punitive damages . . . are recoverable for the tort[] of . . . intentional infliction of emotional distress.").  The court therefore finds that defendants' arguments unpersuasive because there is a genuine issue of fact for the jury to determine in this case regarding whether defendants engaged in willful, deceptive, or outrageous conduct.  Accordingly, defendants' motions for summary judgment with respect to plaintiffs' punitive damages claims will also be denied.

## CONCLUSION

For all the reasons set for above,

1.      The Avalos defendants' initial motion for summary judgment (Doc. No. 140) is stricken;

2.      The Avalos defendants' motion for summary judgment (Doc. No. 141) is denied;

/////

3.   Defendants PTSA and Wheeler's motions for summary judgment (Doc. Nos. 137, 138) are granted in part and denied in part as follows:

    a.   Summary judgment is denied as to plaintiff McClure's failure to exhaust administrative remedies prior to filing this suit;

    b.   Summary judgment is denied as to plaintiffs' third and fourth causes of action brought pursuant to 42 U.S.C. § 1983 to the extent the claim is based on the alleged deliberate indifference to plaintiffs' medical needs;

    c.   Summary judgment is denied as to plaintiffs' third and fourth causes of action brought pursuant to 42 U.S.C. § 1983 to the extent the claim arises from the lack of seatbelts in the PTSA van;

    d.   Summary judgment is granted in defendants' favor as to plaintiffs' third and fourth causes of action brought pursuant to 42 U.S.C. § 1983 to the extent the causes of action are related to the air conditioning and defendants' attempts to open the rear doors to the PTSA van after the collision;

    e.   Summary judgment is granted in defendants' favor as to plaintiffs' third and fourth causes of action brought pursuant to 42 U.S.C. § 1983 arising from plaintiffs' claims regarding the frequency of bathroom breaks;

    f.   Summary judgment on the grounds of qualified immunity is denied as to defendant Wheeler;

    g.   Summary judgment is granted in defendant PTSA's favor as to plaintiffs' fourth cause of action brought pursuant to 42 U.S.C. § 1983 due to plaintiffs' failure to present evidence satisfying the requirements of *Monell*;

    h.   Summary judgment is denied as to plaintiffs' fifth and sixth causes of action for intentional infliction of emotional distress; and

    i.   Summary judgment is denied as to plaintiffs' claim for punitive damages.

/////

/////

46

1    4.    This action now proceeds on the following claims:

2         a.    Plaintiffs' first cause of action against defendants Wheeler and PTSA for

3              negligence;

4         b.    Plaintiffs' second cause of action against the Avalos defendants for

5              negligence;

6         c.    Plaintiffs' third cause of action brought pursuant to 42 U.S.C. § 1983

7              against defendant Wheeler, to the extent it is based on his alleged

8              deliberate indifference to plaintiffs' medical needs and arising from the

9              lack of seatbelts in the PTSA van;

10        d.    Plaintiffs' fifth cause of action against defendant Wheeler for intentional

11             infliction of emotional distress;

12        e.    Plaintiffs' sixth cause of action against defendant PTSA for intentional

13             infliction of emotional distress; and

14        f.    Plaintiffs' seventh cause of action against defendant Gonzalez for

15             negligence.

16   5.    The parties are directed to contact Courtroom Deputy Mamie Hernandez at (559)

17        499-5652, or MHernandez@caed.uscourts.gov, within ten days of service of this

18        order regarding the rescheduling of the Final Pretrial Conference and Jury Trial

19        dates in this action.

20   IT IS SO ORDERED.

21   Dated:    **April 22, 2022**                    _____

22                                          UNITED STATES DISTRICT JUDGE

47